Next case, Wernertech-Nashville v. Compensation Commission 5100178. Counsel, please. May it please the Court, I'm Dennis Douglas from Keith and Napoleon on behalf of the Respondent-Wernertech-Nashville. In this case, this lady is alleging that from January 2007 to August 2007, she was operating a machine that was out of adjustment, that this required her to exert some force in putting two pieces together in the machine, that this constitutes repetitive trauma, and that this trauma caused her to develop an adhesive capsulitis. We've heard other cases this morning having to do with the fact that when you're repetitive with the case, the question of causation is within the knowledge of experts only, and the same expert opinion is needed for a petition to prove causation in such a case. The arbitrator in the Commission relied on the opinions of Dr. Weimer that the problem was causally connected. My position is, our position is, that there is no basis for that opinion in this record. He was asked a hypothetical question on page 140 of the record that did have the allegation of exerting force to put these two parts together, but the doctor did not respond to that question. What the doctor did instead of that was he read what he had put in the note on September 6, 2007 when he first saw her, and that note that he read into the record was, repetitive activity such as she was doing could be a cause that could help, that could lead to the development of adhesive capsulitis in the shoulder. That's page 140 of the record. Do we know in the deposition that he was reading from a note? I mean, you know that. You're just reading the deposition. Is the next question, though, Dr. Arden, just reading from a note? It just appears as an answer. Mr. Burnett asked the hypothetical question. I made an objection. Then the doctor said, quote, On her original note on September 6, I indicated I thought that repetitive activity such as she was doing could be a cause that could help, that could lead to the development of adhesive capsulitis in the shoulder. Then we went on. There's nothing in that indicating that he was intending to respond or thought he was responding to the hypothetical question. All he did was read something he put into a note the first time he saw her. Did he need to say, and I still agree with that after the question? I think he needed something else to show that he was taking the hypothetical into consideration. So, in essence, you're arguing the claimants that Dr. Weimer's opinion is based on a mistaken understanding of her job duties. Is that sort of what you're saying? Incomplete, first incomplete, and then, secondly, a misunderstanding. Is there a motion to strike the answer and require him to answer the question asked? No, Mr. Justice, there was no such motion. I thought that was for counsel to hear, not for me to hear. As far as I was concerned, at that point, we did not actually have an answer to the hypothetical. But you did have an answer to the question. Is it your opinion with respect to causal connection, based on your understanding that she was engaging in an activity that would push the shoulder to the end point of range of motion at work? And the answer was yes. Do you have an answer to that question? Yes, sir. That came later. I'll come to that. The opinion that he gave and the opinion that the commission relied upon is based on whatever he knew in September 2007. The record does not show what he knew, except she told him her work was very repetitive. The actual note is not in evidence. He did not say if she told him anything else. She did not say what she told him, so we don't know if he knew anything else. He conceded that if the problems are activity related, it would depend on what activity she did with each arm. And he said he did not know what activity she did with both arms or either arm. So there's no testimony whatsoever in the record from the doctor where he is associating her problems with the stresses of putting these parts together. As to the repetitive motion involved in the work, you can say that, yes, he did give an opinion having to do with repetitive motion. However, when I'm cross-examining him and I'm asking him about what type of repetitive motion he thinks she was doing, he specifies a particular type of repetitive motion, which was that type of a wrangly arm and shoulder joint to an end range of motion. He stated, I said, Is your opinion with respect to causal connection based on your understanding she was engaging in an activity that would push the shoulder to the end point of range of motion at work? And he said yes. Now, there is absolutely no evidence whatsoever in this record of her engaging in such a motion. Her testimony doesn't support that? No, sir. Didn't she testify as to what she did, demonstrate how she did it? She absolutely did. She said, well, at first she did not describe any kind of a motion that would take her to an end range of motion. There's nothing else in the record that would indicate that. There was actually nothing in the record indicating that she was attributing her symptoms to anything other than the motion involved in putting these two parts together. Actually, Respondent's Exhibit 1 was her report when she finally complained to the company about her problems. She said that her problems were associated with the parts being hard to put together. She never said she was going to an end range of motion. Would that be the kind of language you would expect her to work with in a textbook? My shoulder hurts because I'm constantly having to go to the end range of my motion. I would not expect this lady to use an orthopedic term in describing what was going on. I would expect that after we had taken this deposition at the time we came to trial, some sort of evidence would be elicited from her if she, in fact, did that kind of thing, whether in those words or not, from which a person could assume that this was taking place. Well, doesn't that sort of get in the record or the evidence perhaps in sort of a backwards way? As I understand it, you introduced the DVD that attempted to accurately depict the range of motion and how she was required to move her shoulder, correct? Correct. Obviously, Weimer didn't opine anything on the DVD, correct? He didn't say. Yet it appears that the claimant then, in response to the introduction of the DVD, testified that the DVD was not completely accurate because it did not show her how she had to use her hands to push the pieces together. So didn't it sort of get in the record, her testimony about how she did the job and the motion that she needed to complete? Is it sort of in there perhaps in a backwards way? Not exactly. What actually went on there is what she said, her description of the motion in the record is, I put my right hand underneath the part and with my left hand I exerted the force to push the two pieces together. That's the motion, that's not anywhere near an end range of motion. She agreed the video showed the motions that she did, but she said the parts were going together more easily. She did not say any motion was left out. She agreed that this video actually showed what she was doing. She did not say that she did a motion that was not on the video. The arbitrator said she agreed that the job was substantially shown on there, except it went more smoothly because the parts were going together more easily. Did she not say, however, that to pop the doors together she had to use her arms to exert considerable force on the pieces? Yes, she did. That's the one I said before, there's no causal connection evidence having to do with that. That was not understood by Dr. Weimer. We don't know if Dr. Weimer knew about that or not. In fact, I'm certain he did not know because he did not include that in his opinion. She said whenever she talked about the video showing the parts going together more easily than they did when she did it, what she's talking about there is not that it's a different motion. What she's talking about there is she had to exert greater pressure to do it, which is a different thing entirely. There really isn't any dispute, though, is there, Mr. Douglas, that she was supposed to put together 45 doors per hour? This was a repetitive type job with the same thing over and over. Her testimony is 45 doors per hour. And she testified that she began having pain in January and it got worse and worse and worse up until August when she finally reported it. She did? She did, and that's absolutely correct. And is it also accurate that there were repairs performed on the machine after she reported this injury? That's what she said. Okay. The point is Dr. Weimer did not respond to the hypothetical, which is the only place in the record that this business of parts being more difficult to put together. That's the only evidence that he could have based an opinion on if he didn't answer the hypothetical. So he's got nothing in there about the parts being hard to put together as being a problem for her. With respect to the repetitive work in general, the only opinion he's got in there is based on his misunderstanding that this work required moving the shoulder joint to the end ranges of motion. Is that argument made before the commission? Yes. All right. Yes. And obviously it's up to them to determine the weight and the strength of the evidence, correct? I think they first have to determine if it exists. I submit that there is no evidence that Dr. Weimer based any opinion on these parts being hard to put together. I submit that there is no evidence that this job required her shoulder joint to be moved to the end range of motion in any direction. Therefore, there is no medical opinion evidence based on facts to support this conclusion. Does the record have to contain facts to support the conclusion? Doesn't Wilson v. Clark apply to comp cases also? All he's got to do is give his opinion. It's your obligation on cross-examination to draw out of him the fact that the opinion is based on error. I think the facts from which he is giving his conclusion have to be in the record somewhere. I don't think the commission can— Not under Wilson v. Clark, they don't have to be. I don't think the commission can assume the facts. I mean, the facts have to be there, and then the person offering the conclusion has to say, based on these facts, I'm drawing a conclusion. In this case, we have one important fact that's not there at all, and we have another important fact that he did rely on that's wrong. I mean, under Wilson v. Clark, all he's got to do is stand up and say, I have an opinion. The opinion is within a reasonable degree of medical certainty. There's a causal connection between her work and the injuries she suffered. Period, and sit down. That's all he was required to do. It would seem to me that would be against the preponderance of the evidence. If you have a doctor expressing an opinion that's not connected to the facts of the case at all, to me that opinion would be a nullity. I can't see how you can base a decision on that. Well, once you draw the doctor that his opinion is based upon the consultation with the entrance of chickens, you move to strike the opinion. And in this particular case, where is the evidence that his opinion was based upon wrong facts, as opposed to there is no evidence in the records of what those facts are? Well, the opinion is based on wrong facts. One, he did not have anything in his opinion having to do with the difficulty of putting the two parts together. And it's on the wrong fact, because he admitted to me he was assuming that she was taking her shoulder to the end range of motion, which is not a fact. It was never shown to be a fact, and the fact was shown not to be a fact on the basis of the job video and the testimony of the petitioner. Dr. Weimer admitted that there were sufficient other causes for this lady to develop this problem. She has her age. She has the fact that she's female. She has the fact that she's an insulin-dependent diabetic. All these things were working on her at the same time this was going on. He said it is possible that this condition developed without having anything to do with the work and the total absence of trauma. So I don't think Dr. Weimer has a valid opinion. I don't think the commission could conclude that the facts were there for him to form an opinion. There's nothing in there about difficulty putting the parts together. The repetitive motion was a particular kind of repetitive motion. It was shown not to be there. And then I had an opinion from Dr. Strickland, who did know what the job was, had reviewed the job video, could see the job video. He was of the opinion that this was more likely idiopathic. He said it's common in middle-aged ladies for unknown causes. It has a significant increase in insulin-dependent diabetics, which this lady was. It's not an accumulative trauma event. He saw the video. He knew what the motions were. He read Dr. Weimer's deposition. He knew what his opinion was. He was of the opinion there was no causal connection between her work activities and her development of this condition. I don't think there was a causal connection or opinion that was worthy of being relied upon by the commission. I think it was totally analog. Thank you. Counsel, please. Thank you. Good morning. Good morning, your honors. Gary DeMette for Diane Malik. The commission didn't think it was analogy. The commission, the arbitrator, wrote specifically that she found Dr. Weimer's opinions more thorough and well-reasoned than that of Dr. Strickland, and Dr. Strickland failed to explain the effect of repetitive activities on the development of adhesive capsulitis. They make a specific finding. We're going to go with this doctor's findings over this doctor's findings. I think they have every right to do that. If Mr. Douglas thought that there was an improper foundation, that's where it needed to be brought up to the commission, and the commission found against it, found that Dr. Weimer was correct. How do you respond specifically to the essence of his argument that Weimer's opinion was based on a misunderstanding of the claimant's job duties and therefore should be entitled to no weight? Well, I don't believe there was a misunderstanding. What did he know? That there was repetitive activity using her arms. Now, this lady actually demonstrates, and Mr. Douglas stood here and put his hands together here, but this is an armor door where she demonstrates where she reaches out, reaches over her left arm, and pushes them together like this, and she does 45 of these an hour. That is repetitive work, whether or not there's a lot of force going on or not. He also talked about this endpoint range, but Mr. Douglas also talked about in the therapy, there's some kind of thing about reaching for a phone and having an increase in pain. Dr. Weimer also talked about that also being any time you're going to reach for the end range of your shoulder, you're going to have pain. Well, that's no different than reaching out to a pushy armor door and doing the other. So I think there was evidence to support that opinion. I think he didn't give a proper opinion. I don't know that he needed to say he needed to have certain amount of force to push these doors together. Just the fact that his opinion was the repetitive nature of the work by itself was enough. I think that was enough. So the amount of force is sort of a red herring? I believe it is, yes. Unless there's any further questions. Thank you, Counsel Rebuttal. I did make these arguments to the commission. The commission just simply did not go along with them. They were presented. The repetitive use of the arms was a particular kind of repetitive use of the arms. According to Dr. Weimer, it was the kind that had to do with bringing the joint to the end range of motion. Job video at 56 seconds and one minute and 57 seconds. The work can be seen doing that motion. Admittedly, it's an easier motion than what she had to do because the parts were harder to put together than she was doing it. But no one has positively connected her problems to that. There is a medical explanation for this lady's development of these problems. It does not require anything having to do with her work to explain why she developed this condition. Thank you, Counsel. The court will take the matter under advisement for disposition.